Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 9/18/2023 at 2:29 PM EST

File another claim

| | |
|---|---|
| **Case Name:** | Dayshawn Dametrie Anslem |
| **Case Number:** | 23-12424-amc |
| **Creditor Name:** | PennyMac Loan Services, LLC.<br>P.O. Box 2410<br>Moorpark, CA 93020 |
| **Claim Number:** | 7   Claims Register |
| **Amount Claimed:** | $283,836.79 |
| **Amount Secured:** | $283836.79 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Anslem 23-12424 POC1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=9/18/2023] [FileNumber=31541647-
0] [89ffaaf7c4c144facea2f51e0a576c1367be411e3fcae0442972553e0287033515
ac250c25a77c91f7a88fa964f30951f397f28f660ba023e9f2f9c3557a5918]]
**Document description:**Exhibit 410a
**Original filename:**C:\fakepath\Anslem 23-12424 POC 410a.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=9/18/2023] [FileNumber=31541647-
1] [2e994696363c1f4968fa83e9728b69596d4dfbacc58e0556119409bb2281c17996
0af4a16c743ed4d6e9a65b3421a5c9310446 7b27f69cbf7b71d36fd00e0e49d9]]
**Document description:**Service List
**Original filename:**C:\fakepath\Anslem 23-12424 POC cos.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=9/18/2023] [FileNumber=31541647-
2] [3ab012d2db630fe71cc978e7b485353ace26fecc1c1635f7c3d511ffef199858aa7
aae84503f7d6a874813ac36ee367e2861cb442133affc4a0f06b651b289d18]]
**Document description:**Exhibit escrow
**Original filename:**C:\fakepath\Anslem 23-12424 POC ea.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=9/18/2023] [FileNumber=31541647-
3] [1c6064e8a5a4b0782819ecdf56d6bde1069056db6afa885d09f4444997823242da
13f605ad60a6ed756d202c977030cc0cc1671c796646b81f5ccaa63aa4dedb]]
**Document description:**Exhibit loan docs
**Original filename:**C:\fakepath\Anslem 23-12424 POC loan docs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=9/18/2023] [FileNumber=31541647-
4] [7bf1c7eb1d52ab3037c5d25290b2d404817e32120e5e5467dfff27ace9726f362d
83a93fb9404f4295c91efced981f8ed88805e8da766db10d34306d1e142c22]]

**23-12424-amc Notice will be electronically mailed to:**

MICHAEL A. CIBIK on behalf of Debtor Dayshawn Dametrie Anslem
mail@cibiklaw.com, cibiklawpc@jubileebk.net;ecf@casedriver.com

MARK A. CRONIN on behalf of Creditor PENNYMAC LOAN SERVICES, LLC
bkgroup@kmllawgroup.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

SCOTT F. WATERMAN [Chapter 13]
ECFMail@ReadingCh13.com

**23-12424-amc Notice will not be electronically mailed to:**

BMW Financial Services NA, LLC, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

**Fill in this information to identify the case:**

Debtor 1    Dayshawn Dametri Anslem
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   23-12424 AMC

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | **PENNYMAC LOAN SERVICES, LLC** |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☒ No |
|---|---|
| | ☐ Yes.  From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **PennyMac Loan Services, LLC.**<br>Name | **PennyMac Loan Services, LLC.**<br>Name |
| | **P.O. Box 2410**<br>Number        Street | **P.O. Box 660929**<br>Number        Street |
| | **Moorpark, CA 93020**<br>City        State        Zip Code | **Dallas, TX 75266-0929**<br>City        State        Zip Code |
| | **866-629-4570**<br>Contact phone | **866-629-4570**<br>Contact phone |
| | **BK@pnmac.com**<br>Contact Email | **BK@pnmac.com**<br>Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. Does this claim amend one already filed? | ☒ No | |
|---|---|---|
| | ☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on _____<br>MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
|---|---|
| | ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor   **7865** |

7. **How much is this claim?** **$283,836.79**

**Does this amount include interest or other charges?**

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property: 7661 Fillmore Street Philadelphia, PA 19111**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:   Recorded Mortgage**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $_____

Amount of the claim that is secured: **$283,836.79**

Amount of the claim that is unsecured:   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$8,981.01**
Annual Interest Rate (when case was filed) **3.250%**

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

11. **Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

242

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   __09/18/2023__
              MM / DD / YYYY

**/s/ Brian C. Nicholas Esquire Attorney ID# 317240**
                    Signature

**Print the name of the person who is completing and signing this claim:**

| Name | **Brian C. Nicholas** | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number        Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |
| Contact phone | **201-549-5366** | Email | **bnicholas@kmllawgroup.com** |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-12424 AMC | Principal Balance | $277,871.05 | Principal & Interest | $6,196.20 | Principal & Interest | $1,239.24 |
| Debtor 1 | Dayshawn Dametri Anslem | Interest Due | $4,057.68 | Pre-petition Fees Due | $253.28 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $1,654.78 | Monthly Escrow | $292.22 |
| Last 4 Digits to Identify | 7865 | Fees / Costs Due | $253.28 | Projected Escrow Shortage | $876.75 | | |
| Creditor | PENNYMAC LOAN SERVICES, LLC | Escrow Def for Funds Advanced | $1,654.78 | | | Mortgage Insurance | $192.39 |
| Servicer | PENNYMAC LOAN SERVICES, LLC | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $283,836.79 | Total Prepetition Arrears | $8,981.01 | Total Monthly Payment | $1,723.85 |

**PART 5: Loan Payment History From First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| | | | | | | 0.00 | | | | | | | | 0.00 | 0.00 | 0.00 |
| 4/1/2023 | 1,780.12 | | | Monthly Payment Due | 4/1/2023 | 1,780.12 | | | | | | 277,871.05 | | 647.78 | 0.00 | 0.00 |
| 4/17/2023 | | | 49.57 | Late Charge | 4/1/2023 | 1,780.12 | | | | 49.57 | | 277,871.05 | | 647.78 | 49.57 | 0.00 |
| 4/26/2023 | | | 192.39 | MIP Disb | 4/1/2023 | 1,780.12 | | | (192.39) | | | 277,871.05 | | 455.39 | 49.57 | 0.00 |
| 5/1/2023 | 1,780.12 | | | Monthly Payment Due | 4/1/2023 | 3,560.24 | | | | | | 277,871.05 | | 455.39 | 49.57 | 0.00 |
| 5/16/2023 | | | 49.57 | Late Charge | 4/1/2023 | 3,560.24 | | | | 49.57 | | 277,871.05 | | 455.39 | 99.14 | 0.00 |
| 5/26/2023 | | | 192.39 | MIP Disb | 4/1/2023 | 3,560.24 | | | (192.39) | | | 277,871.05 | | 263.00 | 99.14 | 0.00 |
| 6/1/2023 | 1,780.12 | | | Monthly Payment Due | 4/1/2023 | 5,340.36 | | | | | | 277,871.05 | | 263.00 | 99.14 | 0.00 |
| 6/16/2023 | | | 49.57 | Late Charge | 4/1/2023 | 5,340.36 | | | | 49.57 | | 277,871.05 | | 263.00 | 148.71 | 0.00 |
| 6/28/2023 | | | 192.39 | MIP Disb | 4/1/2023 | 5,340.36 | | | (192.39) | | | 277,871.05 | | 70.61 | 148.71 | 0.00 |
| 7/1/2023 | 1,780.12 | | | Monthly Payment Due | 4/1/2023 | 7,120.48 | | | | | | 277,871.05 | | 70.61 | 148.71 | 0.00 |
| 7/10/2023 | | | 20.00 | Property Inspection | 4/1/2023 | 7,120.48 | | | | 20.00 | | 277,871.05 | | 70.61 | 168.71 | 0.00 |
| 7/17/2023 | | | 49.57 | Late Charge | 4/1/2023 | 7,120.48 | | | | 49.57 | | 277,871.05 | | 70.61 | 218.28 | 0.00 |
| 7/27/2023 | | | 192.39 | MIP Disb | 4/1/2023 | 7,120.48 | | | (192.39) | | | 277,871.05 | | (121.78) | 218.28 | 0.00 |
| 7/28/2023 | | 1,780.12 | | Monthly Payment Posted | 5/1/2023 | 5,340.36 | 486.67 | 752.57 | 540.88 | | | 277,384.38 | | 419.10 | 218.28 | 0.00 |
| 7/28/2023 | | 1,780.12 | | Monthly Payment Posted | 6/1/2023 | 3,560.24 | 487.99 | 751.25 | 540.88 | | | 276,896.39 | | 959.98 | 218.28 | 0.00 |
| 8/1/2023 | 1,780.12 | | | Monthly Payment Due | 6/1/2023 | 5,340.36 | | | | | | 276,896.39 | | 959.98 | 218.28 | 0.00 |
| 8/2/2023 | | | 1,533.00 | Prop Ins Disb | 6/1/2023 | 5,340.36 | | | (1,533.00) | | | 276,896.39 | | (573.02) | 218.28 | 0.00 |
| 8/4/2023 | | | 20.00 | Property Inspection | 6/1/2023 | 5,340.36 | | | | 20.00 | | 276,896.39 | | (573.02) | 238.28 | 0.00 |
| 8/8/2023 | | | 15.00 | NSF Fee | 6/1/2023 | 5,340.36 | | | | 15.00 | | 276,896.39 | | (573.02) | 253.28 | 0.00 |
| 8/8/2023 | | (1,780.12) | | Monthly Payment Posted | 5/1/2023 | 7,120.48 | (487.99) | (751.25) | (540.88) | | | 277,384.38 | | (1,113.90) | 253.28 | 0.00 |
| 8/8/2023 | | (1,780.12) | | Monthly Payment Posted | 4/1/2023 | 8,900.60 | (486.67) | (752.57) | (540.88) | | | 277,871.05 | | (1,654.78) | 253.28 | 0.00 |
| 8/11/2023 | | | | Current BK Filed | 4/1/2023 | 8,900.60 | | | | | | 277,871.05 | | (1,654.78) | 253.28 | 0.00 |

# PENNYMAC™

P.O. BOX 514387
LOS ANGELES, CA 90051 4387

**Escrow Account Disclosure Statement**

**Statement Date:** August 16, 2023

**Property Address:**
7661 FILLMORE ST
PHILADELPHIA PA 19111

7661 FILLMORE ST
PHILADELPHIA, PA 19111-2414

✉ **Questions?** Visit our website @
**www.PennyMac.com**
(800) 777 - 4001 (Se Habla Español)
M - F: 5:00 AM - 6:00 PM PT
Sat: 7:00 AM - 11:00 AM PT

## Annual Escrow Account Review

At least once each year, PennyMac Loan Services, LLC ("PennyMac") reviews your escrow account to make sure there is enough money to pay your property taxes and/or insurance premiums. This statement informs you of any adjustments to your monthly payment, shows you how much money you currently have in your escrow account and how much you will need in the next 12 months.

## Your New Mortgage Payment

During the next year, your escrow account balance is projected to have a surplus (meaning more funds than necessary to pay your taxes and/or insurance as they come due). See Your Escrow Surplus on page 2 for more details.

| Description | Current Monthly Payment Amount | New Monthly Payment Amount |
|---|---|---|
| Principal and Interest | $1,239.24 | $1,239.24 |
| Escrow Payment | $540.88 | $484.61 |
| Total Payment Amount | $1,780.12 | $1,723.85 |

Please start making the 'New Monthly Payment Amount' on September 01, 2023. Payments due prior to this date should be made at the 'Current Monthly Payment Amount' shown.

## Projected Escrow Account Activity

Over the next year, PennyMac expects to pay $5,815.40 from your escrow account. Your new monthly escrow payment is $484.61.

| Escrow Item Description | Annual Amount | | Monthly Amount |
|---|---|---|---|
| City Tax: | $1,973.72 | | |
| Hazard Ins: | $1,533.00 | | |
| Mortgage Insurance: | $2,308.68 | | |
| Total Payments from Escrow: | $5,815.40 | ÷ 12 = | $484.61 |

## Projected Escrow Account Activity (Continued)

Below is a projection of escrow account activity from September 01, 2023 through August 31, 2024. These amounts may change when the actual payments become due.

| Month | Escrow Deposit(s) | Tax Payment(s) | Insurance Payment(s) | Mortgage Insurance Payment(s) | Projected Balance |
|---|---|---|---|---|---|
| Beginning Escrow Balance | | | | | $1,049.62 |
| Sep 2023 | $484.61 | $0.00 | $0.00 | $192.39 | $1,341.84 |
| Oct 2023 | $484.61 | $0.00 | $0.00 | $192.39 | $1,634.06 |
| Nov 2023 | $484.61 | $0.00 | $0.00 | $192.39 | $1,926.28 |
| Dec 2023 | $484.61 | $0.00 | $0.00 | $192.39 | $2,218.50 |
| Jan 2024 | $484.61 | $0.00 | $0.00 | $192.39 | $2,510.72 |
| Feb 2024 | $484.61 | $0.00 | $0.00 | $192.39 | $2,802.94 |
| Mar 2024 | $484.61 | $1,973.72 | $0.00 | $192.39 | $1,121.44 |
| Apr 2024 | $484.61 | $0.00 | $0.00 | $192.39 | $1,413.66 |
| May 2024 | $484.61 | $0.00 | $0.00 | $192.39 | $1,705.88 |
| Jun 2024 | $484.61 | $0.00 | $0.00 | $192.39 | $1,998.10 |
| Jul 2024 | $484.61 | $0.00 | $1,533.00 | $192.39 | $757.32 [1] |
| Aug 2024 | $484.61 | $0.00 | $0.00 | $192.39 | $1,049.54 |
| Ending Escrow Balance | | | | | $1,049.54 |
| Totals | $5,815.32 | $1,973.72 | $1,533.00 | $2,308.68 | |

[1] Lowest projected balance.

## Your Escrow Surplus

Based on the projected activity above, our review shows that you will have a surplus of $172.87. Due to your loan being in a delinquent status, this surplus amount will remain in your escrow account.

| | |
|---|---|
| Lowest Projected Balance | $757.32 |
| Minimum Required Balance | $584.45 |
| Escrow Surplus | $172.87 |

PennyMac requires a minimum balance up to one-sixth of the estimated total annual payments from your escrow account, unless state law or your mortgage contract requires less, to help cover any unexpected increase in taxes and/or insurance. The minimum required balance does not include mortgage insurance.

## Escrow Account History

The following is the statement of activity in your escrow account from August 08, 2023 through August 31, 2023.

The table below shows the Projected and Actual account history for the previous escrow account period. If no information appears under the projected columns, you were not provided a projection for the previous 12-month period.

| | Payments | | Disbursements | | | | Escrow Balance | |
| th | Projected | Actual | Projected | Description | Actual | Description | Projected | Actual |
|---|---|---|---|---|---|---|---|---|
| **Beginning Escrow Balance** | | | | | | | | ($573.02) |
| Aug 2023 | | $1,622.64 *E | | | $0.00 | | | $1,049.62[2] |
| **Ending Escrow Balance** | | | | | | | | $1,049.62 |
| **Totals** | $0.00 | $1,622.64 | $0.00 | | $0.00 | | | |

[2] Lowest actual balance.

An asterisk '*' beside an amount indicates a difference from projected activity, either in the amount or the date.

The letter 'E' beside an amount indicates that the payment has not yet occurred, but is estimated to occur as shown.

At the time of analysis, PennyMac assumes that you will make all scheduled mortgage payments by or before the effective date of your new payment (shown in the Projected Escrow Account Activity section above).

## Other Important Information

| | | | |
|---|---|---|---|
| **How to Contact Us** | 🖥 www.PennyMac.com<br>Available 24/7 on all your devices:<br>PC, Tablet, and Mobile.<br>*El sitio web y las declaraciones están disponibles en español.*<br>**Go Paperless today!** | 📞 <u>PennyMac Customer Service:</u><br>(800) 777  4001<br>M  F: 5:00 AM  6:00 PM PT<br>Sat: 7:00 AM  11:00 AM PT<br>**Fax:** (866) 577  7205 | ✉ PennyMac Loan Services, LLC<br>Attn: Correspondence Unit<br>P.O. Box 514387<br>Los Angeles, CA 90051 4387 |

| | | | |
|---|---|---|---|
| **How to Make a Payment** | **Auto-Pay \*:** Enroll in Auto Pay, on our website, to set up recurring payments from the bank account of your choice.<br>**Pay Online:** Make a one time payment on our website. | **Pay-by-Phone:** (800) 777 4001<br>*(Fees may apply to use this service)*<br>**Western Union:**<br>Code City: *PennyMac*<br>Pay To: *PennyMac Loan Services*<br>Code State: *CA*<br>ID Number: *Enter Loan Number* | **Check \*\*:** Mail to PennyMac:<br>**Standard Address:** P.O. Box 660929<br>Dallas, TX 75266 0929<br>**Overnight Address:**<br>Attn: Lockbox Operations<br>20500 Belshaw Ave.<br>Carson, CA 90746 |

| | | |
|---|---|---|
| **Tax and Insurance Information** | **Property Tax Bills:**<br>If you receive a tax bill, you do not need to take any action. **(Please note:** Supplemental/ Additional tax bills are the responsibility of the homeowner; PennyMac will pay them from the escrow account upon request.) | **General Insurance Questions:** (866) 318 0208<br>**Insurance Information:** Any time there is a change to your insurance policy please provide your insurance carrier the following information:<br>    **Mortgagee Clause:**<br>    PennyMac Loan Services, LLC<br>    Its Successors and/or Assigns<br>    P.O. Box 6618<br>    Springfield, OH 45501 6618 |

| | |
|---|---|
| **Credit Reporting Information** | We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. |
| **Important Consumer Information** | This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally. |

**Requests for prior payment adjustments:** To request funds for a prior payment be applied differently, you **must** notify PennyMac within 90 days of the original transaction. After 90 days, we will only change the application of funds if the transaction was applied contrary to your documented instructions.

*\* If you are enrolled in a PennyMac Auto Pay program, and received a payment change notification, the new payment amount will be drafted on your scheduled draft date. (The principal curtailment amount will not change.) If you pay via online bill payment, please update the payment amount with your financial institution to ensure timely processing of your payment.*

*\*\* When you pay with a check, you authorize PennyMac either to use information from your check to make a one time electronic fund transfer (EFT) from your account, or to process the payment as a check transaction. When we use information from your check to make an EFT, funds may be withdrawn from your account on the same day PennyMac receives your payment. Please note that your financial institution will not send back your check. If funds are returned unpaid, a return service charge may be assessed to your loan whether processing your payment as a check or an EFT, as allowed by applicable law.*

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

**NEW YORK**  If a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; and 11) Ninety percent of your wages or salary earned in the last sixty days. PennyMac Loan Services, LLC is registered with the Superintendent of the New York State Department of Financial Services (Department). You may obtain further information or file a complaint by calling the Department's Consumer Assistance Unit at 1 800 342 3736 or by visiting www.dfs.ny.gov.

**NORTH CAROLINA**    Licensed by the North Carolina Office of the Commissioner of Banks. Complaints regarding the servicing of your mortgage may be submitted to the Office of the Commissioner of Banks, 316 W. Edenton Street, Raleigh, NC 27603, (919) 733 3016. Licensed by the North Carolina Department of Insurance. Permit No. 119504607  6101 Condor Dr., Suite 200, Moorpark, CA 93021. Permit No. 119505929   14800 Trinity Blvd., Fort Worth, TX 76155. Permit No. 119506567   3043 Townsgate Rd., Suite 200, Westlake Village, CA 91361. Permit No. 119506570   2201 West Plano Parkway, Suites 150 and 300, Plano, TX 75075. Permit No. 119507419   10550 West Charleston Blvd., Suite A, Las Vegas, NV 89135.

**OREGON**    Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (800) 777-4001. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

Equal Housing Opportunity © 2008 2023 PennyMac Loan Services, LLC, 3043 Townsgate Rd, Suite 200, Westlake Village, CA 91361, 818 224 7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Licensed by the Department of Financial Protection and Innovation under the California Residential Mortgage Lending Act. Colorado: Colorado office: 5500 South Quebec Street, Suite 260, Greenwood Village, Colorado 80111, (877) 215 2552. Massachusetts Mortgage Lender License # MC35953. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Licensed by the N.J. Department of Banking and Insurance. Licensed Mortgage Banker NYS Department of Financial Services. Rhode Island Lender License # 20092600LL. For more information, please visit PENNYMAC.COM/state licenses. Co op Loans not available. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (01 2023)



**NOTE**

December 29, 2021
[Date]

Doylestown,
[City]

Pennsylvania
[State]

7661 Fillmore St, Philadelphia, PA 19111
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$284,747.00**     (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  **Huntingdon Valley Bank, a State Chartered Savings Bank.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of  **3.250 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in
this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   **1st**        day of each month beginning on  **February 1, 2022.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will
be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on
**January 1, 2052,**            I still owe amounts under this Note, I will pay those amounts in full on that date, which is
called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in
this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under
this Note.
I will make my monthly payments at  **2005 S Easton Rd, Suite 304**
**Doylestown, PA 18901**

or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S  **$1,239.24.**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of
my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such
loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already
collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund
by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the
reduction will be treated as a partial Prepayment.

PENNSYLVANIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     3239 2/16
Modified for FHA 5/15
ICE Mortgage Technology, Inc.                                      Page 1

Initials: ___



## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11.  EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a)  any default described in Section 6(B) of this Note;

(b)  Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c)  Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d)  the Maturity Date as defined in this Note;

(e)  the entry of any judgment against me under this Note; and

(f)  the entry of any judgment under the Security Instrument.

PENNSYLVANIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   3239 2/16
Modified for FHA 5/16
ICE Mortgage Technology, Inc.                                      Page 2 of 3

Initials: _____

FHA3200PANT   0516
FHA3200NOT (CLS)
12/27/2021 05:33 AM PST

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
DAYSHAWN ANSLEM

Lender: Huntingdon Valley Bank

[Sign Original Only]

**PENNSYLVANIA FIXED RATE NOTE** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    3239 2/16
Modified for FHA 5/16
ICE Mortgage Technology, Inc.                           Page 3 of ████

Initials: _____
FHA3200PANT    0518
FHA3200NOT (CLS)
12/27/2021 05:33 AM PST

ALLONGE TO THE NOTE

ORIGINAL LENDER NAME:    Huntingdon Valley Bank

DATE OF NOTE:    12/29/2021

BORROWER(S) NAME(S):    Dayshawn Anslem

PROPERTY ADDRESS:    7661 Fillmore St, Philadelphia, PA 19111

LOAN AMOUNT:    284,747.00

PAY TO THE ORDER OF
PENNYMAC CORP.
WITHOUT RECOURSE

HUNTINGDON VALLEY BANK,
a State Chartered Bank

Kelly Diaciak, VP Closing and Post Closing

When recorded, return to:
**Huntingdon Valley Bank**
**Attn: Final Document Department**
**2005 S Easton Rd, Suite 304**
**Doylestown, PA 18901**

**This document was prepared by:**
**Huntingdon Valley Bank**
**2005 S Easton Rd, Suite 304**
**Doylestown, PA 18901**
**215-674-9209**

———————— **[Space Above This Line For Recording Data]** ————————

# MORTGAGE



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words
are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of
words used in this document are also provided in Section 15.

Initials: _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 1 of 23                    PAEFHA15DL  1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

**(A) "Security Instrument"** means this document, which is dated **December 29, 2021,** together with all Riders to this document.
**(B) "Borrower"** is **DAYSHAWN ANSLEM, UNMARRIED MAN.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
**(D) "Lender"** is **Huntingdon Valley Bank.**

Lender is **a State Chartered Savings Bank,** organized and existing under the laws of **Pennsylvania.**
Lender's address is **2005 S Easton Rd, Suite 304, Doylestown, PA 18901.**

**(E) "Note"** means the promissory note signed by Borrower and dated **December 29, 2021.** The Note states that Borrower owes Lender **TWO HUNDRED EIGHTY FOUR THOUSAND SEVEN HUNDRED FORTY SEVEN AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. **$284,747.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 1, 2052.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Initials: 

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law)
as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an elec-
tronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct,
or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions,
transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of dam-
ages, or proceeds paid by any third party (other than insurance proceeds paid under
the coverages described in Section 5) for: (i) damage to, or destruction of, the Property;
(ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpay-
ment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et
seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might
be amended from time to time, or any additional or successor legislation or regulation that
governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all
requirements and restrictions that are imposed in regard to a "federally related mortgage
loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _DA_____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 3 of 23                    PAEFHA15DL    1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

**(Q)"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **Philadelphia**

[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of    **7661 Fillmore St, Philadelphia,**

[Street] [City]

Pennsylvania **19111**              ("Property Address"):

[Zip Code]

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 4 of 23                    PAEFHA15DL    1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 5 of 23                    PAEFHA15DL   1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

    First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    Third, to interest due under the Note;

    Fourth, to amortization of the principal of the Note; and,

    Fifth, to late charges due under the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower,

Initials: _DA_

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 6 of 23                    PAEFHA15DL   1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 7 of 23                    PAEFHA15DL   1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 8 of 23                    PAEFHA15DL    1221
                                                                                PAEDEDL (CLS)
                                                                        12/27/2021 05:33 AM PST

tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the

Initials: _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                   Page 9 of 23                   PAEFHA15DL  1221
                                                                              PAEDEDL (CLS)
                                                                     12/27/2021 05:33 AM PST

work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for

Initials: __DA__

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 10 of 23                    PAEFHA15DL   1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 11 of 23                    PAEFHA15DL  1221
                                                                                  PAEDEDL (CLS)
                                                                        12/27/2021 05:33 AM PST

or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 12 of 23                    PAEFHA15DL  1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

Instrument immediately before the partial taking, destruction, ████████████████████
Borrower and Lender otherwise agree in writing, the sums secured by this Security Instru-
ment shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the
following fraction: (a) the total amount of the sums secured immediately before the partial
taking, destruction, or loss in value divided by (b) the fair market value of the Property
immediately before the partial taking, destruction, or loss in value. Any balance shall be
paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which
the fair market value of the Property immediately before the partial taking, destruction,
or loss in value is less than the amount of the sums secured immediately before the
partial taking, destruction, or loss in value, unless Borrower and Lender otherwise
agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by
this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower
that the Opposing Party (as defined in the next sentence) offers to make an award to
settle a claim for damages, Borrower fails to respond to Lender within 30 days after the
date the notice is given, Lender is authorized to collect and apply the Miscellaneous
Proceeds either to restoration or repair of the Property or to the sums secured by this
Security Instrument, whether or not then due. "Opposing Party" means the third party
that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has
a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal,
is begun that, in Lender's judgment, could result in forfeiture of the Property or other
material impairment of Lender's interest in the Property or rights under this Security
Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate
as provided in Section 18, by causing the action or proceeding to be dismissed with a
ruling that, in Lender's judgment, precludes forfeiture of the Property or other material
impairment of Lender's interest in the Property or rights under this Security Instrument.
The proceeds of any award or claim for damages that are attributable to the impairment
of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Prop-
erty shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension
of the time for payment or modification of amortization of the sums secured by this
Security Instrument granted by Lender to Borrower or any Successor in Interest of
Borrower shall not operate to release the liability of Borrower or any Successors in

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 13 of 23                    PAEFHA15DL  1221
                                                                                    PAEDEDL (CLS)
                                                                             12/27/2021 05:33 AM PST

Interest of Borrower. Lender shall not be required to commence ███████████████████
Successor in Interest of Borrower or to refuse to extend time for payment or otherwise
modify amortization of the sums secured by this Security Instrument by reason of any
demand made by the original Borrower or any Successors in Interest of Borrower. Any
forbearance by Lender in exercising any right or remedy including, without limitation,
Lender's acceptance of payments from third persons, entities or Successors in Interest
of Borrower or in amounts less than the amount then due, shall not be a waiver of or
preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.**
Borrower covenants and agrees that Borrower's obligations and liability shall be joint
and several. However, any Borrower who co-signs this Security Instrument but does
not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to
mortgage, grant and convey the co-signer's interest in the Property under the terms of
this Security Instrument; (b) is not personally obligated to pay the sums secured by this
Security Instrument; and (c) agrees that Lender and any other Borrower can agree to
extend, modify, forbear or make any accommodations with regard to the terms of this
Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower
who assumes Borrower's obligations under this Security Instrument in writing, and is
approved by Lender, shall obtain all of Borrower's rights and benefits under this Secu-
rity Instrument. Borrower shall not be released from Borrower's obligations and liability
under this Security Instrument unless Lender agrees to such release in writing. The
covenants and agreements of this Security Instrument shall bind (except as provided
in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in
connection with Borrower's default, for the purpose of protecting Lender's interest in
the Property and rights under this Security Instrument, including, but not limited to,
attorneys' fees, property inspection and valuation fees. Lender may collect fees and
charges authorized by the Secretary. Lender may not charge fees that are expressly
prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is
finally interpreted so that the interest or other loan charges collected or to be collected
in connection with the Loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit;
and (b) any sums already collected from Borrower which exceeded permitted limits
will be refunded to Borrower. Lender may choose to make this refund by reducing the

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 14 of 23                    PAEFHA15DL  1221
                                                                                 PAEDEDL (CLS)
                                                                                 12/27/2021 05:33 AM PST

principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 15 of 23                    PAEFHA15DL   1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

**16. Borrower's Copy.** Borrower shall be given one copy ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank

Initials: _DA_____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                Page 16 of 23                PAEFHA15DL  1221
                                                                          PAEDEDL (CLS)
                                                                          12/27/2021 05:33 AM PST

check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law;

Initials: **DA**

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 17 of 23                    PAEFHA15DL   1221
PAEDEDL (CLS)
12/27/2021 05:33 AM PST

and (d) an "Environmental Condition" means a condition that ███████████████, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 18 of 23                    PAEFHA15DL    1221
                                                                                    PAEDEDL (CLS)
                                                                          12/27/2021 05:33 AM PST



(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive

Initials: _DA_

**PENNSYLVANIA**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                      Page 19 of 23                      PAEFHA15DL    1221
                                                                                       PAEDEDL (CLS)
                                                                              12/27/2021 05:33 AM PST

all of the rents of the Property; and (c) each tenant of the Pr████████████
due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.**

**25. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After

Initials: _DA_

such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**27. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**28. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**29. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

**(a)** pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

**(b)** pay the amounts and take the actions required by Section 4 of this Security Instrument;

**(c)** maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

**(d)** maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

**(e)** if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

**(f)** treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

**(g)** permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

**(h)** pay the fees required by Section 13 of this Security Instrument;

**(i)** continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

**(j)** pay any collection expenses under Section 24 of this Security Instrument; and

**(k)** pay interest at the rate payable from time to time under the Note.

Initials: ___DA___

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                Page 21 of 23                PAEFHA15DL    1221
                                                                PAEDEDL (CLS)
                                                        12/27/2021 05:33 AM PST



"Survival Event" means any of the following:

**(a)** any default described in the Note;

**(b)** Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

**(c)** Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 24 of this Security Instrument;

**(d)** the Maturity Date as defined in the Note;

**(e)** the entry of any judgment against Borrower under the Note; and

**(f)** the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____    _12-29-2_(Seal)
DAYSHAWN ANSLEM                                              DATE

Initials: _DA_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000 1)
ICE Mortgage Technology, Inc.                    Page 22 of 23                    PAEFHA15DL  1221
                                                                                   PAEDEDL (CLS)
                                                                                   12/27/2021 05:33 AM PST

State of PENNSYLVANIA

County of ~~PHILADELPHIA~~
Montgomery

This record was acknowledged before me on this, the 29th day of DECEMBER, 2021, by DAYSHAWN ANSLEM.

_____
Signature of Notarial Officer
(STAMP)

> Commonwealth of Pennsylvania - Notary Seal
> CHRISTINE MALLOZZI, Notary Public
> Montgomery County
> My Commission Expires June 16, 2023
> Commission Number 1100976

Title of Officer _____

My commission expires _____

Lender: Huntington Valley Bank
NMLS ID
Loan Originator: Brendan Corey
NMLS ID

Certificate of Residence
I, _____Christine Mallozzi_____ , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___29th___ day of __December__ 2021

_____
Agent of Mortgagee

Initials: __DA__

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified for FHA by ICE Mortgage Technology, Inc. All rights reserved. 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                    Page 23 of 23                    PAEFHA15DL   1221
                                                                                 PAEDEDL (CLS)
                                                                                 12/27/2021 05:33 AM PST

# Exhibit A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Hereditaments and Appurtenances, SITUATE in the 63rd Ward (formerly part of the 35th Ward) of the City of Philadelphia, and State of Pennsylvania, described according to a Plan and Survey made by Howard LeQuin, Surveyor and Regulator of the 1st District, dated the 7th day of September, A.D. 1956, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Fillmore Street (60 feet wide) at the distance of 766 feet, 2-3/8 inches, North 39 degrees, 49 minutes 41 seconds East along the same from the point of tangent at the Northerly end of the curve to the right having a radius of 100 feet and an arc length of 164 feet, 5-3/4 inches which connects the said Southeasterly side of Fillmore Street with the Northeasterly side of Shelmire Avenue (60 feet wide), the Northeasterly half of the said connecting curve being the Southeasterly curved side of the said Fillmore Street, and the Southeasterly half thereof being the Northeasterly curved side of the said Shelmire Avenue; thence extending from the said beginning point, North 39 degrees, 49 minutes 41 seconds East along the said Southeasterly side of Fillmore Street, 28 feet, 2 inches; thence South 50 degrees, 10 minutes, 19 seconds East at right angles with the said Fillmore Street and passing through the center of the partly wall between these premises and the premises adjoining on the Northeast and crossing the Northwesterly side of a certain proposed (12 feet wide) driveway at a point distant 78 feet, 4-/12 inches from the beginning of the course being described, and leading Northeastwardly into Naple Avenue (60 feet wide) and Southwestwardly into the said Shelmire Avenue and crossing the said proposed (12 feet wide) driveway and extending beyond the same, 92 feet, 2-1/2 inches; thence South 37 degrees, 40 minutes, 53 seconds West, 28 feet, 2-1/4 inches; and thence North 50 degrees, 19 minutes, 19 seconds West recrossing the said proposed (12 feet wide) driveway, the said Northwesterly side thereof being at the distance of 77 feet, 10 inches from the end of the course being described, 93 feet, 3-1/4 inches to and at right angles with the said Southeasterly side of Fillmore Street at the said first mentioned point and place of beginning.

BEING known as 7661 Fillmore Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway, as and for a driveway and passageway at all times hereafter, forever, in common with the owners, tenants and occupiers of the lots of ground bounding thereon and entitled to the use thereof.

eRecorded in Philadelphia PA   Doc Id: 54215853
08/23/2023 03:21 PM   Page 1 of 3   Rec Fee: $221.50
Receipt#: 23-69805
Records Department   Doc Code: A

**Prepared By:**
**Jennifer Zak/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
PennyMac Loan Services, LLC
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR HUNTINGDON VALLEY BANK, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 12/29/2021, in the amount of $284,747.00 made by **DAYSHAWN ANSLEM** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR HUNTINGDON VALLEY BANK, ITS SUCCESSORS AND ASSIGNS** recorded on 02/10/2022, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, in the State of **Pennsylvania**, in **Doc ID 53970302**

SEE ATTACHED EXHIBIT A

Property is more commonly known as: 7661 FILLMORE ST, PHILADELPHIA, PA 19111.

**Dated this 23rd day of August in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR HUNTINGDON VALLEY BANK, ITS SUCCESSORS AND ASSIGNS**

By: _L A͟S͟T͟U͟_____
**LAUREN ASTLE**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 23rd day of August in the year 2023, by Lauren Astle as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR HUNTINGDON VALLEY BANK, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**JULIE MARTENS**

**COMM EXPIRES: 5/22/2026**

JULIE MARTENS
Notary Public - State of Florida
Commission # HH 243030
My Comm. Expires May 22, 2026
Bonded through National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR HUNTINGDON VALLEY BANK, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**
to:
**PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **DAYSHAWN ANSLEM**

All that certain lot or piece of ground situated in
Mortgage Premises: 7661 FILLMORE ST
            PHILADELPHIA, PA 19111
            PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Lauren Astle**, do certify that the precise address of the within named Assignee is:
**PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**LAUREN ASTLE**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

# Exhibit A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Hereditaments and Appurtenances, SITUATE in the 63rd Ward (formerly part of the 35th Ward) of the City of Philadelphia, and State of Pennsylvania, described according to a Plan and Survey made by Howard LeQuin, Surveyor and Regulator of the 1st District, dated the 7th day of September, A.D. 1956, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Fillmore Street (60 feet wide) at the distance of 766 feet, 2-3/8 inches, North 39 degrees, 49 minutes 41 seconds East along the same from the point of tangent at the Northerly end of the curve to the right having a radius of 100 feet and an arc length of 164 feet, 5-3/4 inches which connects the said Southeasterly side of Fillmore Street with the Northeasterly side of Shelmire Avenue (50 feet wide), the Northeasterly half of the said connecting curve being the Southeasterly curved side of the said Fillmore Street, and the Southeasterly half thereof being the Northeasterly curved side of the said Shelmire Avenue; thence extending from the said beginning point, North 39 degrees, 49 minutes 41 seconds East along the said Southeasterly side of Fillmore Street, 28 feet, 2 inches; thence South 50 degrees, 10 minutes, 19 seconds East at right angles with the said Fillmore Street and passing through the center of the party wall between these premises and the premises adjoining on the Northeast and crossing the Northwesterly side of a certain proposed (12 feet wide) driveway at a point distant 76 feet, 4-7/12 inches from the beginning of the course being described, and leading Northeastwardly into Napfle Avenue (60 feet wide) and Southwestwardly into the said Shelmire Avenue and crossing the said proposed (12 feet wide) driveway and extending beyond the same, 92 feet, 2-1/2 inches; thence South 37 degrees, 40 minutes, 53 seconds West, 28 feet, 2-1/4 inches, and thence North 50 degrees, 19 minutes, 19 seconds West recrossing the said proposed (12 feet wide) driveway, the said Northwesterly side thereof being at the distance of 77 feet, 10 inches from the end of the course being described, 93 feet, 3-1/4 inches to and at right angles with the said Southeasterly side of Fillmore Street at the said first mentioned point and place of beginning.

BEING known as 7661 Fillmore Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway, as and for a driveway and passageway at all times hereafter, forever, in common with the owners, tenants and occupiers of the lots of ground bounding thereon and entitled to the use hereof.

BEING the same premises which Lisa C. DiCicco and Angelo L. Monaco, Jr., by Deed dated May 21, 2010, and recorded May 24, 2010, in the Office of the Recorder of Deeds in and for the County of Philadelphia, Pennsylvania, as Instrument No. 52215017, granted and conveyed unto Joan H. Wertz, in fee.

AND THE SAID Joan H. Wertz a/k/a Grace Joan Wertz departed this life on October 7, 2019. leaving a Will dated March 25, 2005, which was probated in the Office of the Register of Wills of Philadelphia County, Pennsylvania, File No. W4740-2019, wherein Robert Lee Wertz was granted Letters Testamentary on November 15, 2019.

BEING the same premises which Robert Lee Wertz, Executor of the Estate of Grace Joan Wertz a/k/a Joan H. Wertz, by Deed dated March 22, 2021, and recorded May 21, 2021, in the Office of the Recorder of Deeds in and for the County of Philadelphia, Pennsylvania, as Instrument No. 53835828, granted and conveyed unto Robert Lee Wertz, an individual, in fee.
*This page is only a part of a 2016 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Dayshawn Dametri Anslem | CHAPTER 13 |
| Debtor(s) | NO. 23-12424 AMC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for PENNYMAC LOAN SERVICES, LLC do hereby certify that true and correct copies of the foregoing Proof of Claim have been served September 18, 2023, by electronic filing upon those listed below:

Attorney for Debtor(s)
CIBIK2, MICHAEL A.
1500 Walnut Street, Suite 900 (VIA ECF)
Philadelphia, PA 19102

**Bankruptcy Trustee**
Scott F. Waterman
2901 St. Lawrence Ave.
Suite 100
Reading, PA 19606

Date: September 18, 2023

/s/**Brian C. Nicholas Esquire**
Brian C. Nicholas Esquire
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com